**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL CASE NO. 26-40-DLB-EBA**

**ROCKHOUSE ENTERPRISES INC.**                                    **PLAINTIFF**


**v.**                                **MEMORANDUM ORDER**


**CARBON REDUCTION RESOURCES, et al.**                 **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Plaintiff Rockhouse Enterprises Inc.'s Motion for Temporary Injunction Pursuant to FRCP 65 (Doc. # 9).  Defendants Carbon Reduction Resources LLC, Daniel Langley, and Richard Ben Haymaker, III filed a response to the motion (Doc. # 24) and Plaintiff filed a reply (Doc. # 30).  For the reasons set forth herein, the Court **denies** the motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In February of 2025, Rockhouse Enterprises LLC ("Rockhouse") and Carbon Reduction Resources LLC("CRR") entered into a contractual relationship which contemplated Rockhouse obtaining mineral rights to unmined coal from certain landowners, which it would transfer to CRR, which, in turn, would utilize them to generate "carbon credits", which, then, CRR would sell. After sales were made, CRR was to remit a percentage of the gross revenue from those sales to Rockhouse.

This arrangement was effectuated though a series of agreements. The first, the "Revenue Sharing Agreement," was executed on February 15, 2025, and, in addition to

1

the general contractual framework, provided that Rockhouse would receive "one-tenth (10%) of the gross amount received for the sale of Carbon Credits to third-parties, or One Dollar ($1) per Credit purchased by CRR. (Doc. # 9-5).  It further provided that if CRR failed to pay $5,000,000 within 180 days, Rockhouse was entitled to a "reversal of the Transfer Agreement." *Id.*

Two days later, the parties executed a "Mineral Transfer Agreement" by which Plaintiff transferred its mineral rights in 34,505,972 tons of unmined coal by quitclaim deed to CRR. (Doc. # 9-6). Per the agreement, the mineral rights were transferred to CRR "with no recourse." This agreement provided that it "supersede[d] all prior and contemporaneous understandings, agreements, both written and oral, concerning such subject matter."  *Id.*

On August 31, 2025, the parties executed a "First Amendment" modifying the payment structure to require two payments: $500,000 by September 5, 2025, and $10,000,000 by October 31, 2025. (Doc. # 9-8).  On October 28, 2025, the Rockhouse signed an "Amendment to the First Amendment", which extends the $10,000,000 payment deadline from October 31, 2025, to November 30, 2025. (Doc # 9-10).   The signature line for CRR is blank.

It is not disputed that November 30, 2025, came and went with no $10,000,000 payment from CRR to Rockhouse.  The parties diverge in their allegations of what transpired after February 2025.  For example, CRR claims that negotiations as to the schedule of payment were ongoing, whereas Rockhouse asserts any delays are CRR's efforts to avoid contract performance. Rockhouse contends that the mineral rights fraudulently transferred from CRR to a trust maintained in some part by Defendants. CRR

2

maintains that the mineral rights were sequestered in that trust so that its coal avoidance program would receive a favorable rating, which would inure to the benefit of both CRR and Rockhouse.    CRR states that it has paid $1,500,000 to Rockhouse directly. Rockhouse appears to deny receiving such payment.

Rockhouse ultimately filed a lawsuit in Magoffin Circuit Court against CRR and others, alleging breach of contract, fraud in the inducement and fraudulent transfer as well as seeking injunctive relief. (Doc. 1-1). The case was removed this Court (Doc. # 1) and Rockhouse filed the instant motion seeking emergency injunctive relief two weeks later (Doc. # 9).  Specifically, Rockhouse sought entry of an Order enjoining CRR or its agents from "disposing of the identified mineral rights and carbon credits," and directing CRR to "identify the location of the mineral rights and carbon credits" and provide a full accounting of all sales to date. (Doc. 9-3). On March 13, 2026, the undersigned convened a telephonic status conference and set a briefing schedule. (Doc. # 18).  This matter is now ripe for review.

## II.    STANDARD OF REVIEW

A preliminary injunction is just that - *preliminary*.   *EOG Resources Inc. v. Lucky Land Management LLC*, 134 F.4th 868 (6th. Cir. 2025). "Its purpose 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.' " *Id.* at 883, (quoting *Starbucks Corp.*, 602 U.S. at 346). "It does not conclusively resolve anything— that's what final judgment is for." *Id.* "The preliminary injunction simply puts the case in a holding pattern and 'balance[s] the equities as the litigation moved forward.' " *Id.* (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580, (2017) (per curiam).

3

In analyzing whether injunctive relief is warranted, a court considers four well-recognized factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

The four factors are not prerequisites that must be established at the outset but are interconnected considerations that must be balanced together. *Ne. Ohio Coal.*, 467 F.3d at 1009; *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). However, "the demonstration of some irreparable injury is a ***sine qua non*** for issuance of an injunction. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002)(emphasis added). The burden is upon the party seeking injunctive relief to demonstrate that "circumstances clearly demand" a preliminary injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th. Cir. 2002). Nothing short of a "clear showing" is required. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 20 (2008).

### III.   ANALYSIS

Here, Rockhouse has not demonstrated a strong likelihood of success on the merits of either its breach of contract or fraud claims as alleged in its Complaint. "A party is not required to prove [its] case in full at a preliminary injunction hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). "However, in order to establish success on the merits of a claim, a plaintiff must

4

show more than a mere possibility of success." *Id.*  The scant record before the Court is riddled with factual disputes. These discrepancies belie Rockhouse's ability to make a "clear showing" of a strong likelihood of success on the merits of its claims.  While discovery may ultimately resolve some of these contested issues, for now the Court simply cannot make that preliminary finding.

Even if Rockhouse had moved the needle in its favor as to the first factor, it has not carried its burden as to irreparable harm. This is fatal to its motion. Irreparable harm is the core of the preliminary injunction.  *EOG Resources Inc.*, 134 F.4th at 883. "This factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)

What harm qualifies as "irreparable"?   Harm that is neither speculative nor theoretical and such that cannot be "fully compensated by monetary damages." *Overstreet*, 305 F.3d at 578.  Notably, in its motion, Rockhouse plainly states that it will suffer "serious financial hardship" in the absence of an injunction. (Doc. # 9, pg. 10).  It alleges that it "has not been paid for its mineral rights" and has been deprived of the ability to sell the carbon credits." *Id.* at 11.  Notwithstanding that Rockhouse did not contract for control over the carbon credits but, rather, for a percentage of the revenue from their sale, it concedes only monetary injury.  Although Rockhouse makes a passing reference to a "risk of injury to its reputation and goodwill" due to its inability to pay its downstream partners or engage another entity to sell the carbon credits, this is speculative, at best. Moreover, any attempt to claim that future carbon credit sales will be to its detriment is, again, speculative.  A Court may not issue a preliminary injunction in the absence of some

5

showing of irreparable harm. *D.T. v. Sumner Cnty. Schs.,* 942 F.3d at 327. A failure to demonstrate irreparable harm ends the Rule 65 inquiry.

Rockhouse appears to urge the Court to resolve this case, at this juncture, on the merits. However, as set forth, *supra*, injunctive relief is a vehicle by which to preserve the status quo as the litigation proceeds, not a fast track to a final judgment.

## IV.    CONCLUSION

Preliminary injunctive relief is an extraordinary remedy. In this case, Rockhouse has not carried its burden of proving that these circumstances demand it.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Rockhouse Enterprises Inc.'s Motion for Temporary Injunction Pursuant to FRCP 65 (Doc. # 9) is **DENIED**.

This 21st day of April 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2026\26-40 Order Denying PI.docx